IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LUIS RODOLFO PAIZ | ) |
| | ) |
| v. | ) No. 3:13-00534 |
| | ) CHIEF JUDGE SHARP |
| NANCY BERRYHILL[1], | ) |
| acting Commissioner of the | ) |
| Social Security Administration | ) |

MEMORANDUM

I. Introduction

Pending before the Court is the Plaintiff's Motion For Judgment On The Administrative Record (Docket No. 8), to which the Defendant has filed a Response. (Docket No. 9). For the reasons set forth herein, the Plaintiff's Motion is DENIED, and the decision of the Social Security Administration is AFFIRMED.

II. Procedural Background

The Plaintiff filed an application for disability insurance benefits under the Social Security Act claiming disability based on a herniated disc in his back, and pain in his right shoulder, neck, and right knee. (Administrative Record ("AR"), at 42-43 (Docket No. 5)). The Plaintiff's claim was denied at the initial review stage, and also after the Plaintiff requested reconsideration. (AR, at 42-45). The Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ convened the hearing on September 19, 2011. (AR, at 53-54, 11-41).

---

[1] Nancy Berryhill became acting Commissioner for the Social Security Administration on January 23, 2017.

The Plaintiff appeared with counsel at the hearing, and testified in support of his claim. (Id.) The ALJ issued a written decision on October 7, 2011, finding that the Plaintiff was not disabled. (Id.) In his decision, the ALJ found as follows:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since November 18, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: bilateral knee osteoarthritis, right shoulder degenerative joint disease, and lumbar degenerative disc disease (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).
>
> 6. The claimant is capable of performing past relevant work as an aircraft maintenance superintendent. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from November 18, 2007, through the date of this decision (20 CFR 404. 1520(f)).

(AR, at 16-19).

The Appeals Council denied the Plaintiff's request for review of the ALJ decision (AR, at 1-3), which became the final decision of the Social Security Administration ("SSA"). *Sims v. Apfel*, 530 U.S. 103, 107, 120 S. Ct. 2080, 2083, 147 L. Ed. 2d 80 (2000). This action, seeking review of that decision, has been timely filed, and the Court has jurisdiction under 42 U.S.C. § 405(g) to adjudicate it.

III. Review of the Record

The Plaintiff testified at the hearing before the ALJ that he was 58 years old. (AR, at 29). According to the Plaintiff, he had completed two years of college-level work, and had held a license issued by the Federal Aviation Administration as an aircraft mechanic. (Id., at 29-30). The Plaintiff testified that he retired from 23 years of military service, and then worked as an airline mechanic and in other jobs . (Id., at 37-38). The Plaintiff explained that he left aviation because he could not work on airplanes when taking medication. (Id.)

As for his medical condition, the Plaintiff testified that he had been diagnosed as having arthritis "all over the body," and that he has chronic back and knee pain. (Id., at 30-31). The Plaintiff also testified that he suffered from diabetes, blurred vision, and dizzy spells. (Id.) According to the Plaintiff, as of the date of the hearing, he had been using a cane to walk for the past 18 months, spent most of the day in bed, and was unable to drive. (Id., at 32-35).

After the Plaintiff testified, the ALJ stated that he did not have any questions for the vocational expert who was present at the hearing, and asked the Plaintiff's attorney if she had anything further to add. (Id., at 40). She said she did not. (Id.)

In his subsequent written opinion, the ALJ reviewed the medical evidence as follows:

> Records from the Department of Veterans Affairs ('VA') document back pain complaints since at least July 7, 2009, when [the Plaintiff] was seen in the VA hospital emergency room for such complaints. He had previously been overseas and requested medication refills. VA records show he established a treatment relationship at the local VA facility on August 5, 2009. He was still complaining of lower back pain. He made additional back pain complaints on November 6, 2009. Interestingly, he declined a prescription for pain medications other than Tramadol, suggesting his pain might have not been particularly severe.
>
> A few days later, on November 14, 2009, he had a compensation and pension examination at the VA. He reported a history of bilateral knee pain in the military. This had grown progressively worse, but right knee arthroscopic surgery provided

3

> some improvement. He noted dislocating his right shoulder in 1985. This led to increasing pain and decreased motion. He eventually had rotator cuff repair. X-rays showed only minimal degenerative joint disease in both knees and mild degenerative joint disease in his right shoulder. He reported being unemployed due to his back pain. He said it started in the military and grew progressively worse such that he claimed to sometimes need a walker. Magnetic resonance imaging of his lumbar spine did reveal a herniated disc at L5-S1, along with multilevel degenerative disc disease. He claimed it had a severe effect on his ability to complete daily chores (Ex. 7F).
>
> He started pain management services in February 1, 2010. He was now on Percocet and was about to receive lumbar epidural steroidal injections (Ex. 8F). However, he continued to complain of lower back pain through October 2010. Percocet caused an allergic rash (Ex. 10F; 11F). VA staff members eventually persuaded him to try methadone for his lower back on October 18, 2010 (Ex. 13F).
>
> He started complaining more of right knee pain in early 2011. He was seen in the VA hospital emergency room complaining of three weeks of such pain on March 12, 2011. He made a lot of complaints regarding his care at the VA over the next few months, but he was in good enough health to plan a several month visit to South America in the coming months (Ex. 13F).
>
> He started seeing Dr. Keith Starkweather, M.D., for his right knee pain in May 2011. Dr. Starkweather diagnosed him with right knee osteoarthritis. This included signs of crepitus. Dr. Starkweather performed right knee arthroscopy on June 10, 2011. The claimant does appear to have responded fairly well to this surgery, although he continued to make various musculoskeletal complaints related to previous injuries. Dr. Starkweather prescribed Celebrex, which had improved his knee, shoulder, and spinal pain by July 11, 2011. A new magnetic resonance imaging study of his lumbar spine was unremarkable with minimal findings, contrary to the past study (Ex. 16F).

(AR, at 17-18).

As to the Plaintiff's testimony at the hearing, the ALJ explained that he gave it significant weight in finding that the Plaintiff is limited to sedentary work, but did not fully credit the testimony because it was not consistent with the medical records and other evidence. (Id., at 18). The ALJ pointed out that the earliest mention of the Plaintiff's having used a cane was on May 25, 2011, approximately four months prior to the hearing, rather than 18 months as he testified.

4

(Id.) The ALJ also pointed out that the Plaintiff's testimony that his blurred vision prevents him from driving was inconsistent with records of a completely normal eye exam conducted in June, 2011 and the absence of any subsequent evidence of a vision problem. (Id.) The ALJ noted that there was no evidence that the Plaintiff had told a medical provider he spends most of the day lying down, and there was no evidence of an impairment that would confine the Plaintiff to a bed most of the day. (Id.)

The ALJ then considered the Medical Source Statements (or "Physical Capacity Evaluation") signed by Dr. Dozier and Dr. Starkweather. (Id.)[2] As more fully explained below, the ALJ determined that the opinions reflected on those forms were not fully supported by the medical evidence in the record. (Id., at 18-19).

IV. Analysis

A. Standard of Review

This Court's review of the SSA decision to deny benefits is "'limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016)(quoting *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 405-06 (6th Cir. 2009)). "Substantial evidence" constitutes "'more than a scintilla' but less than a preponderance" and is "such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In making that determination, the court is to examine the evidence in the record as a whole and "'take into

---

[2] The form is to be completed by a physician and asks that he or she check various boxes to describe the types of limitations the claimant may have. *See, e.g., Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x, 468, 471 (6th Cir. 2016).

account whatever in the record fairly detracts from its weight.'" *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016)(quoting *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). If the court finds substantial evidence to support the decision, it must affirm and "may not inquire whether the record could support a different decision." *Id.* The court may not resolve conflicts in evidence or decide questions of credibility. *Id.; Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). If the ALJ fails to follow agency rules and regulations, however, his or her decision is not supported by substantial evidence, even if the ALJ's conclusion may be justified based upon the record. *Miller*, 811 F.3d at 833.

The ALJ's analysis of the credibility of a claimant is accorded "'great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.'" *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 173 (6th Cir. 2016)(quoting *Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 476 (6th Cir. 2003)). Although subjective complaints of a claimant can support a claim for disability, those claims may be discounted if they are inconsistent with the objective evidence in the record. *Id.*

B. The Five-Step Analysis

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether the claimant is disabled within the meaning of the Social Security Act, the ALJ is to apply a five-step analysis as set forth in 20 C.F.R. § 404.1520(a). *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 627-28 (6th Cir. 2016). "If the claimant is found to be conclusively disabled or not disabled at any step, the inquiry ends at that step." *Id.*, at 627 (quoting *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009)). The analytical framework is as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Kepke,* 636 F. App'x at 627-28. The burden of proof is on the claimant through the first four steps of the analysis, but then shifts to the Commissioner, if the analysis reaches the fifth step, to "'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity. . .'" *Id.*, at 628 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.2004)). The analysis at step four, at issue in this case, requires "'a comparison of the physical demands of the claimant's past relevant work with [his] present mental and physical capacity.'" *Sorrell*, 656 F. App'x, at 169 (quoting *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525,

7

529 (6th Cir. 1997)). In determining the claimant's residual functional capacity, the ALJ is required to consider the combined effect of all of the claimant's ailments. 42 U.S.C. § 423(d)(2)(B); 20 CFR § 404.1545(e). *See also Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014).

In this case, the ALJ found the Plaintiff was capable of performing his past relevant work as an aircraft maintenance superintendent, which state agency vocational specialists classified as "sedentary work." (AR, at 149, 163). The Social Security regulations define "sedentary work" as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.

C. Plaintiff's Statement of Errors

The Plaintiff claims that the ALJ erred in failing to give controlling weight to the Medical Source Statements from the Plaintiff's treating physicians, Dr. Damon Dozier and Dr. Keith Starkweather. In making a disability determination, an ALJ is to give "controlling weight" to the opinion of a treating physician when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 CFR 404.1527(c)(2). If the ALJ does not give controlling weight to the opinion of a treating physician, he or she is required to provide good reasons by identifying specific discrepancies in the record. *Id.*; *Hernandez*, 644 F. App'x, at 473. The ALJ is also required to determine what weight to give the treating physician's opinion by considering

8

the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability of the opinion; consistency of the opinion with the record as a whole; and the specialization of the treating source. 20 C.F.R. § 404.1527(c); *Hernandez*, 644 F. App'x, at 473-74.

The ALJ is to provide "good reasons" for discounting the opinion of a treating physician, and those reasons must be "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)(quoting Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The purpose of this procedural requirement is to "'ensure[] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004)).

The ALJ discussed the opinions of Dr. Dozier and Dr. Starkweather as follows:

> On August 2, 2011, Dr. Damon Dozier completed a form asserting that the claimant would need to lie down for five hours during an eight-hour work day; could never push, pull, or reach with either arm; could never stoop; and would need three work breaks every hour. It appears that Dr. Dozier is a pain specialist who treated the claimant on six occasions between February 1, 2010 and May 25, 2011 (Ex. 11F). His treatment notes do not include any significant abnormal findings, other than back tenderness and positive straight leg raise testing. He does not identify any abnormal findings that support his opinions and he does not offer any narrative explanation for those opinions. Stooping is defined as 'bending the body downward and forward by bending the spine at the waist.' *See* Social Security Ruling 85-15. Dr. Dozier's opinion that the claimant can never stoop is inconsistent with my observation that claimant was able to assume a seated position during his hearing. I give some weight to Dr. Dozier's opinions in finding that the claimant is limited to sedentary work, but I do not give it full credit.
>
> On August 17, 2011, Dr. Keith Starkwater completed a form indicating that the claimant would need to lie down for four hours during an eight hour work day;

9

can never reach with either arm; can never stoop; cannot work full time; and would need a rest break every 30 minutes. It appears that Dr. Starkweather is an orthopedist who treated the claimant on eight occasions between May 12, 2011 and August 17, 2011, and who performed arthroscopic surgery on the claimant's right knee on June 10, 2011 (Ex. 16F). A June 23, 2011 MRI of the lumbar spine had only minimal abnormal findings with no evidence of nerve root impingement. By July 11, 2011, the claimant's right knee was doing well and claimant had no complaints. Dr. Starkweather did not refer to abnormal findings that supported his opinions. He explained that claimant 'has diffuse osteoarthritis' but that statement is not consistent with x-ray or other imaging reports. His statement that claimant can never stoop is inconsistent with the claimant's ability to sit. I give some weight to Dr. Starkweather's opinions in finding that the claimant is limited to sedentary work, but I do not fully credit it.

Two state medical consultants reviewed the evidence and determined that claimant can perform medium work (Exs. 6F and 9F). I give some weight to those opinions, but I find that the claimant is limited to sedentary work because I give some weight to claimant's testimony and the opinions of Drs. Dozier and Starkweather.

(AR, at 18-19).

The Court concludes that the ALJ provided good reasons for according the opinions of Drs. Dozier and Starkweather "some weight" rather than "controlling weight." The ALJ noted the specialization of each doctor, the length of the treatment relationship, and the frequency of examination. The ALJ then explained why the opinions of each doctor were not supported by the record. As for Dr. Dozier, the ALJ pointed out that the restrictions reflected on the form were not supported by any abnormal findings or any narrative explanation, nor were they supported by the doctor's treatment notes. The ALJ also noted that the Plaintiff was able to sit at the hearing, which is inconsistent with Dr. Dozier's finding that he could never stoop. As for Dr. Starkweather, the ALJ explained that the most recent MRI of the Plaintiff's lumbar spine had only minimal abnormal findings, and that records show the Plaintiff's right knee was doing well a couple of months prior to the hearing. The ALJ also pointed out that Dr. Starkweather's

10

assertion that the Plaintiff had "diffuse osteoarthritis" was not consistent with x-ray or other imaging reports. The ALJ also noted again that the assertion that the Plaintiff can never stoop is inconsistent with his ability to sit.

On the other hand, the ALJ disagreed with the state's medical consultants who opined that the Plaintiff was able to perform medium work, instead finding that the Plaintiff was limited to sedentary work based on the weight given to the opinions of Drs. Dozier and Starkweather.

The Plaintiff argues that the forms filled out by the treating physicians do not ask the physician to identify the abnormal findings that support his opinion, and therefore, the ALJ should not reduce the amount of weight given to the opinions on that basis. The ALJ did not reduce the weight given to the opinions solely for failure to note the abnormal findings *on the forms*. Rather, as the ALJ pointed out, the assertions on the forms were not supported by the medical records and other evidence. Furthermore, the Sixth Circuit has held that an ALJ may accord less weight to a physician's "check-box analysis," when it is unaccompanied by explanation. *Hernandez*, 644 F. App'x, at 474-75. *See also Kepke,* 636 F. App'x, at 630 (ALJ properly discounted physician's "checklist opinion" because it failed to provide an explanation for its findings).

The Plaintiff also argues that the ALJ's discussion of stooping is not a sufficient explanation for reducing the weight given the opinions. The Plaintiff contends that his ability to sit in a chair for the hearing is not dispositive proof that he can stoop even occasionally in an occupational setting. The ALJ cited the definition of "stooping" in Social Security Ruling 85-15 – bending the body downward and forward by bending the spine at the waist – in pointing out that the Plaintiff's ability to sit at the hearing was inconsistent with the physicians' assertions

11

that he could never stoop.

Assuming the ALJ erred in equating the ability to sit at the hearing with the ability to stoop, however, the Court finds such an error harmless because the medical evidence does not support the assertion that the Plaintiff can never stoop, and sedentary work requires only occasional stooping. 20 C.F.R. § 404.1567(a); Social Security Ruling 96-9p. *See also McKinnie v. Comm'r of Soc. Sec.*, 24 F. App'x 314 (6th Cir. 2001)(Inability to perform more than occasional stooping does not preclude ability to perform wide range of sedentary work).

The Plaintiff also argues that the ALJ did not address the treating physicians' assertions that he would require a minimum of two breaks an hour, which the Plaintiff contends renders him disabled even if one disregards all his other limitations. In concluding that the treating physicians' assertions about the Plaintiffs' limitations, including the need for breaks, were not supported by the medical evidence, however, the ALJ considered and determined that the assertions were not entitled to full credit.

Finally, the Plaintiff suggests that if the ALJ had allowed the vocation expert to testify at the hearing, she would have "undoubtedly" testified that the Plaintiff "would be disabled based on the limitations provided by both of the treating physicians because both physicians opined that the Plaintiff would be limited to less than full time work and would require significantly more breaks than those customarily tolerated by employers." (Docket No. 8-1, at 8). As noted above, at the hearing, the ALJ stated that he did not have any questions for the vocational expert, and then provided counsel for the Plaintiff an opportunity to raise any other issues. (AR, at 40). Counsel declined. (*Id.*) The Plaintiff's speculation about how the vocational expert would have testified does not serve to undermine the ALJ's conclusions.

In sum, the Court concludes that the decision of the Social Security Administration is supported by substantial evidence on the record as a whole, and should be affirmed.

V. Conclusion

For the reasons set forth herein, the Plaintiff's Motion For Judgment On The Administrative Record (Docket No. 8) is denied.

It is so ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE